May it please the court, counsel, Charles Rabinowitz for the appellant in this case. I would like to reserve two minutes for a rebuttal, if I may. You may. The position of Bruce Christensen in this appeal is that his underlying compensation award of permanent total disability was final because the employer didn't appeal it. It was not something that could be altered or changed or reduced in any way on appeal. And his underlying attorney fee award was also final because the employer did not appeal it and that too could not be reduced on appeal. But he appealed it. We did appeal. Yes, we did. Doesn't his appeal render it not final? Excuse me? Doesn't the fact that he appealed mean the order is not final? That's the argument, is that the... I'm not making an argument, I'm asking a question. I know. The fact, it's not final in the sense that the case is over with and that's the end of the case, but it is final in the sense that the underlying awards were set and they were not going to be changed on appeal. Let me put you a question. If on appeal by the plaintiff the court were to find that the plaintiff did not have standing for some reason which was not apparent at the original case and it reversed the judgment on the grounds that the court didn't have standing to demand jurisdiction, that has happened. It happened in a case last year, I believe, in the Supreme Court of the United States. Couldn't that happen? I'm not aware that that's ever happened in the long-short context. It may not. I don't think it ever happened in the Pledge of Allegiance context either. I don't think in this case, in the context of the long-short case, that it would have been conceivable that an appellate court could rule that the administrative law judge did not have jurisdiction to enter an award. And I'm not sure without an appeal that that could have been. Could the court fix a mathematical or computational error on appeal, even though the defendant had not appealed? I think that would have probably required. Suppose something just jumped off the page. Instead of being $16,000 in compensation, it should be $1,600 because the computation was wrong. There was a decimal point transposed and it was off the tip. Could the court have no jurisdiction to correct a clerical error? I think in that kind of a situation, the mathematical mistake could be corrected. That's correct. That would still probably may not affect the attorney fee award either. But let's suppose nobody had appealed. I think the court still would have some jurisdiction to correct the mathematical mistake. So in that sense, are attorney fees ever going to be paid? What the district court held is that because there was an appeal pending by the claimant in this case, that the case was not final and it held that final means final as to all appeals and to all parties. And this is not consistent with the reasoning that the Seventh Circuit used in the Wells versus Great Lakes International Shipping case, which this court followed in Thompson versus Potashnick Construction Company. In the Wells case, there was an underlying compensation award in favor of the injured worker and there was an attorney fee award in favor of his attorney. The employer appealed the attorney fee award and the claimant sought to enforce the attorney fee award. The district court did enforce the attorney fee award. And then the Seventh Circuit reversed that and held that because the employer had appealed, that award wasn't final. And if they did affirm the district court, the lawyer would be in the very uncomfortable position of keeping the money in an interest-bearing trust account, subject to having to pay it back to the employer at a later date. And the court, through Judge Posner, said that we don't think that Congress intended this kind of a result. But that case, if the claimant only had appealed that award, there would not have been any possibility of the claimant having to hold the money in a trust account and then having to pay it back. And every case that the district court cited was where the employer only had appealed. The only case on record where the claimant only had appealed because he didn't feel the award was inadequate was the Benefits Review Board decision in Von Thronson House v. Engel Shipbuilding, which is in the excerpts of record. And there the Benefits Review Board specifically held that in a situation where the claimant only is appealing, the award is final for purposes of enforcement, the attorney fee award. And that is a case that the district court, in my opinion, should have followed. The district court acknowledged, and this court has held many times, that where the Benefits Review Board's opinion is logical and has a reasonable public policy behind it, the court should respect that. And it's the position that the district court should have followed the Von Thronson House case. It is a reasonable policy. It does avoid a lot of problems, specifically the ethics problem that could arise in this situation. It is also consistent with how the three out of four circuit courts handle civil appeals where a party appeals an inadequate award, a plaintiff, and they can collect the judgment and continue to appeal even though the judgment is not final in the sense that it's the last of a series of processes. What is the significance of whether we reverse the district court and follow the Benefits Review Board approach or, on the other hand, view it as not final under the statute? Is the significance fees in this enforcement action? In other words, I was under the impression from the record that the attorney's fees amount was actually paid off. It was paid after the enforcement proceeding was filed. That's correct. And the way this came up in context is I asked for an attorney fee award for the enforcement and the district court held that it did not have standing to have entered an enforcement award and, therefore, it does not have standing to order attorney fee awards. But the problem is that in the future, every single case where a claimant appeals, the claimant could, for example, in this case, Bruce Christensen prevailed on a permanent total disability claim, which is a pretty substantial award, but the administrative law judge held that the amount of his compensation was reduced because he combined it with a prior award and applied a maximum compensation rate to the combined awards, and Bruce Christensen appealed on that basis. And as a result of that appeal, the employer contended that the attorney fees, based on the permanent total disability award, were not enforceable and were not due and payable. And it will present and does present a lot of problems under the Longshore and Harbor Workers Compensation Act because the attorney essentially has to wait years to get paid, even though the attorney fee award and the underlying compensation award on which that is based is essentially final. Can I revisit what you said about Wells? Sure. I thought you said that upholding the decision here would be inconsistent with Wells? It's inconsistent with the reasoning in Wells. That's correct. What is that? Well, the reasoning that the court used in Wells is they said that the attorney, if they enforced the proceeding, if they affirmed the district court and entered the enforcement proceeding in Wells, what the attorney would have to do is hold the money, the attorney fee, in a trust account because there's a risk that he would have to pay it back, either all of it or some of it, to the employer. And they didn't think that Congress wanted that kind of a situation to occur. But if the attorney fee award was final in the sense that it was not going to be reduced, that situation would not be present. All right. I'll have to take a look at that case. Thank you. To the police, the court, John Dudry for the defendants, Appleby, Stephen Erickson, Services of America, and Homeport Insurance. I think Mr. Rabinowitz's first point is really where the court's analysis should start and stop. Final is final is final. As briefed, the discussion of Wells and Thompson is a little different from the argument this morning. The claimant's attorney in Wells was arguing, well, since the stay provisions don't apply, the employer can't stay the award. It's got to be paid. And that's where the Court of Appeals made the distinction between an order awarding compensation and an order awarding fees, even though the Act calls both orders compensation orders. The reason they're both called compensation orders is so that once everything is final, they can be enforced. It's a compensation order making an award that's become final is the key phrase in Section 21D. The cases that establish the rule that the district court relied on, Wells from the Seventh Circuit and Thompson in this circuit which followed it, are readily exported, if need be, to the situation we have here. In Thompson, was the claimant's attorney the only, I mean, was the claimant the only appellant? The underlying compensation order had been appealed, I believe, by the employer, and the attorney fee order itself had not been appealed. One of the features of the Longshore Act, given the way 21A, 28A, and 21D, the enforcement provision, work together is that the fees aren't payable until the order has become final. And the district court reasoned that the word final in each of those three subsections means the same thing. The court's acceptance of the understanding of what final means, the order that ends the litigation and leaves nothing for the court to do but execute on judgment, in the Johnson case, I think completely undermines the argument here that the claimant is making. And Johnson was the employee, the only appellant? In that case, the employee was the only appellant. And I had, in the 28J letter, submitted the Ramey v. Stephen Erring, Services of America case, simply because they both involve yet another case, the Bellmer case, which is where all of this was decided by the board and then accepted by the Ninth Circuit in Johnson, that the whole premise of allowing the claimant's attorney to supplement his fee application after all the orders have become final in order to address the effect of delayed payment is that you can't enforce the order earlier, so if there's been too much time, you can ask for the order to be supplemented. Interest isn't allowed under the Ninth Circuit's case law, so the question is some adjustment in the rate or current rather than historical rates. The court didn't get to its result in Johnson without assuming exactly as the district court did in this case that any appeals render the underlying fee order non-final and non-enforceable until all the appeals are done. The board said that very clearly in Bellmer, and the Ninth Circuit adopted its reasoning in Johnson. And that is in our briefs at pages 18, or in the red brief at pages 18 to 20. How do you respond to the ethical dilemma posed by appellant's counsel? Okay, you've got a fee award, you've got a damage award. If you go to appeal the damage award to get more for your client, your fee award is going to sit there without interest and be worth less in light of inflation after two or three years, whatever it takes for the appeal. How do you address that? A couple of answers to that, Your Honor. One is that the board and the Ninth Circuit say, well, you can ask for a supplemental award if you didn't get paid that plan. But still, the theory of the supplemental award, I take it, would be your attorney's fees through that date certain or earlier when the award was made? Because you're not allowed interest? Right. And so you really wouldn't, unless someone was willing to kind of blink at it and give you a larger award as of then to make up for the interest you're not getting. Seems like you can ask for a larger award, but you really can't be compensated honestly for the interest on the first award if it was right. Well, it depends on how the adjustment for delay is done. It could be a windfall. Well, my $10,000 award two years ago isn't worth $10,000 now because I've had to wait until everything else has become final. But now under my current rate, you ought to be paying me $15,000. I don't know. You award interest or a current rate or some adjusted rate to account reasonably for the delay. A current rate for the past time? That's the theory underlying Bellmer and Johnson. I don't want to forget about the ethical point, and I've got to subdivide that comment too. The Oregon Disciplinary Code has changed as of the beginning of this year, and their website address has changed. If the court wants to look for those, I'd ask to send a letter to the clerk with the current address because you're not going to find it if you try what I put in the brief. I think that there's no more of an ethical problem in the situation that's posited here than in any legal representation where the fee is contingent on the amount of the recovery. And you have that same decision. Well, we've got kind of a crummy jury award here. We can take that, or we can go up on appeal, and maybe that instruction will be disapproved and we'll get a new trial, or maybe that claim that was thrown out should have gone to the jury, and we'll give it a try, and maybe you'll get a lot more money, and then the fee would be higher too. Or I can get the fee now. There's a lower result, but we're taking our chances and there's a lot more time. I haven't done very many, never did very many contingent fee cases, but in that case you could negotiate with the client an adjustment as to the percentage fee unless it's comparable to this situation, which these fees are statutory, I believe. That is, it's all within the discretion of the board. Each adjudicator determines what's the amount of a reasonable attorney fee under Section 28A. So it would all depend on, if I'm sitting there making a calculus and I'm trying to assess for the client the prospects of taking this on appeal, and I say, you know, you have a 40-60 chance of improving this award if we go up, and the client says, I think I really got screwed and I want you to do that. So the lawyer is ethically obligated now to do it. If he does it in good faith, it takes three to four years to carry out his client's wishes, and he loses. That is, the award remains the same. Now, what's the lawyer going to tell the adjudicator as to why his fee award on the underlying four-year-old, four-and-a-half-year-old judgment that his client has, in the meanwhile, been paid, right? Because that will have been paid. Right. The client doesn't have to wait. That's correct. The lawyer has been waiting, and now where's the offsetting compensation for that, for the lack of use of the money or the interest? Bellmer and Johnson don't address that issue. I think it's an open question. I think a trier of fact may wonder, well, why didn't you pay earlier? Well, you know, it was still in litigation. Maybe the fees were in litigation as well, as is often the case, although that's very hypothetical. I think a trier of fact might well say no. Well, the fees are in dispute. The fees are in dispute under the facts of this case. It's only because the claimant's counsel has put them in dispute. That's correct. Because this is your side has not appealed, nor put in. If you had put them in dispute and had caused the delay by litigating and you lost, then it seems to me the adjustments could be made under these circumstances. This is where the claimant is the initiating party, that is, the client, and the lawyer being the ethically obligated counsel. I mean, I'm a little uncomfortable sitting as a judge trying to sort all these out because this seems to be a structural problem within the regime, and I don't know whether that's ever been addressed. Maybe counsel for the claimant can tell us that, or you can. Well, I guess the corollary, if final is final is final, as written down by Congress in the Act, would have to come from the development of the case law. Maybe in the case you posit the administrative law judge would say, well, delay is delay is delay, and we don't care what the cause is. That's undecided. I wouldn't want to say I wouldn't be taking the position that, well, delay isn't delay isn't delay, but it's certainly open under the cases. I think if you look at the very concluding portion of the Ninth Circuit's opinion in Johnson, as well as the board's opinion in Bellmer, they're very open-ended about how that is to be accomplished. Well, I'm familiar with the Act and the judicial glossary we wind up putting on it. Well, there have been lots of opportunities, so thank you. And if there's been a citation difference for any cases, as you suggest, please advise us by letter that we find that helpful. We have very talented law clerks. I just want to, I would just like to correct something, a possible misunderstanding during Mr. Dudry's argument. The Johnson case was an appeal solely by the employer and the insurance carrier. It was not an appeal by the claimant. What had happened in Johnson, it was a hearing loss claim. The employer appealed to the Benefits Review Board and eventually lost, and then the issue became one of a supplemental fee, but the underlying compensation award was not appealed by the claimant. The Bellmer case --. You did appeal the supplemental fee. The supplemental fee issue was appealed, right, but not the underlying, but the delay had already occurred. And what had happened in Johnson was a hearing loss claim. The claimant won. The employer and carrier then appealed to the Benefits Review Board and several years later lost. Then the claimant asked for a supplemental fee with the administrative law judge who denied it, and then that issue went up on appeal. And in order for the supplemental fee request to be timely, it was essential that the attorney's fee not be final, correct? If the attorney's fee was not final in Johnson because of the- It was required not to be final. Right, that's correct. If it was final, you wouldn't be entitled to a supplemental fee. That's correct. So that's why the court said, as it did, a fee award does not become final and enforceable in that sense until all appeals are exhausted. But your position is all appeals only refers to the employer appeal of the claim, not the employee's attorney's appeal of the supplemental. That's correct. That's correct. And, in fact, in every case that cited Belmer, Johnson, Thompson v. Potash McWells, it was only an appeal by the employer that prevented the award from becoming enforceable. The only case where the claimant only was appealing was the Von Thronson House case. And on page 14 of the excerpts of record, the Benefits Review Board specifically said that because the claimant only had appealed, the inadequacy of the award and the award was considered final when the employer failed to appeal and it would therefore be enforceable. And that is the position that would avoid the ethical problem. It would avoid-and it's consistent also with the reasoning in Wells. Where is that case cited in your brief? The Von Thronson House case is actually-was part of the record in the district court. It was part of the application and it's on pages 10 through 14 of the excerpts of record. That's fine. And I would specifically point to page 14 of the excerpts of record to the court. Okay. Thank you. Thank you. Thank you, counsel, for the argument and the cases submitted.
judges: Fisher, Gould, Bea